UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Zackaria D.M.,[1]

                 Petitioner,                Case No. 21-cv-2629 (SRN/LIB)

    v.

                                           **REPORT AND RECOMMENDATION**

Merrick B. Garland, et al.,

                 Respondents.

      This matter comes before the undersigned United States Magistrate Judge upon Petitioner Zackaria D.M.'s Petition for Writ of Habeas Corpus. [Docket No. 1]. The present case has been referred to the undersigned pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1.

      For the reasons set forth herein, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **GRANTED in part and DENIED in part**.

## I.    Background

      Petitioner is a native of Somalia. (Pet., [Docket No. 1, at p. 3]). Petitioner first arrived in the United States as a refugee on October 6, 1998, but after leaving for Somalia for six months, he returned to the United States as a refugee in May 2006. (Id. at pp. 6-7; Ligon Decl., [Docket No. 13], at ¶¶ 3, 5). Since then, Petitioner has been continuously present in the United States. (Pet., [Docket No. 1], at pp. 6-7). On December 21, 2007, Petitioner filed an I-485 application with the

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration matters such as the present matter. Accordingly, where the Court refers to Petitioner by his name, only his first name and last initial are provided.

USCIS to adjust his status to that of a lawful permanent resident, but it was subsequently denied on January 27, 2009. (Ligon Decl., [Docket No. 13], at ¶ 6; [Docket No. 1-3, at p. 10]).

From July 2011 to June 2013, Petitioner was convicted for a variety of criminal charges, including trespass, possession of a forged instrument, driving while intoxicated, and assault. [Docket No. 1-3, at pp. 7-8]. Petitioner was convicted of three charges of Motor Vehicle Theft on April 23, 2012, and July 23, 2012, respectively, the latter of which he was sentenced to a seventeen-month term imprisonment. (Id.); [Docket No. 1-13, at p. 2]. About two months later, on September 6, 2012, ICE "encountered" Petitioner at the Minnesota Correctional Facility in St. Cloud, Minnesota. (Ligon Decl., [Docket No. 13], at ¶ 7). After being served with a Notice to Appear in removal proceedings on October 19, 2012, the Department of Homeland Security ("DHS") began removal proceedings against Petitioner on June 24, 2013, based on "the above-captioned charges." (Id. at ¶ 8); [Docket No. 1-13, at p. 2].

About four months later, on October 4, 2013, Petitioner was convicted of another criminal charge involving theft. [Docket No. 1-13, at p. 2]. Upon his release from prison, ICE arrested Petitioner and placed him in removal proceedings on October 8, 2013. (Ligon Decl., [Docket No. 13], at ¶ 9). Petitioner appeared for his initial hearing in immigration court on October 17, 2013, where he was represented by an attorney. [Docket No. 1-4, at p. 3]. DHS lodged an additional charge against Petitioner on that same day. [Docket No. 1-13, at p. 2]. Petitioner appeared for a second hearing on October 21, 2013, where he was released on his own recognizance, and his proceedings were administratively closed while he pursued an application for an Adjustment of Status. (Ligon Decl., [Docket No. 13], at ¶¶ 9-10).

Approximately seven months later, an immigration judge sustained the charge of removability under the Immigration and Nationality Act ("INA") under sections 237(a)(2)(B)(ii)

(two crimes involving moral turpitude after admissions) and 237(a)(2)(iii) (an aggravated felony crime). [Docket No. 1-13, at pp. 2-3]. Petitioner did not appear at his next hearing because he was in criminal custody at the time; therefore, Petitioner was ordered to be removed in absentia on May 20, 2014. (Ligon Decl., [Docket No. 13], at ¶ 11); [Docket No. 1-4, at p. 3].

About six months later, on November 24, 2015, Petitioner was convicted of a crime involving stolen property. [Docket No. 1-3, at p. 8]. Shortly thereafter, ICE arrested Petitioner on December 18, 2015, "due to his continued violations of the terms and conditions of his release." (Ligon Decl., [Docket No. 13], at ¶¶ 11-12). Petitioner was subsequently released on December 29, 2015, on an Order of Supervision. (Id. at ¶ 13).

From December 2015 to July 2017, Petitioner was convicted for a variety of criminal charges, including criminal trespass, theft of a motor vehicle, assault, and possession of drug paraphernalia. [Docket No. 1-3, at p. 8].

On September 21, 2016, an immigration judge granted Petitioner's application to reopen his case. (Ligon Decl., [Docket No. 13], at ¶ 14); [Docket No. 1-4, at pp. 3-4]. During reopening proceedings, Petitioner was convicted on September 25, 2017, of "1st Degree Witness Tampering" and "2nd Degree Assault with a Dangerous Weapon"—the latter of which he was sentenced to a sixty-eight-month term of imprisonment.[2] (Zackaria D.M. Decl., [Docket No. 1-2], at ¶ 8); [Docket No. 1-3, at p. 8]. On May 21, 2018, DHS lodged an additional charge against Petitioner. [Docket No. 1-13, at p. 1].

On October 31, 2018, Petitioner appeared by telephone from prison for his first removal hearing where he "acknowledged receipt of [a Notice to Appear]," and, among other things, denied certain allegations. [Docket No. 1-13, at p. 1]. It was also determined during the hearing that,

---

[2] Petitioner was also convicted of the crime of 4th Degree Assault – Correctional Employee; Probation Officer; Prosecutor; or Judge on January 13, 2020. [Docket No. 1-3, at p. 8].

among other things, Somalia would be the designated country of removal.  [Docket No. 1-3, at p. 8].  The immigration judge sustained the charges of removability under the INA under sections 237(a)(2)(B)(ii) (two crimes involving moral turpitude after admissions) and 237(a)(2)(iii) (an aggravated felony crime).  [Docket No. 1-13, at p. 3].  Thereafter, Petitioner appeared pro se by telephone from prison for two additional hearings on January 23, 2019, and April 3, 2019, and for a final hearing on November 25, 2020.  [Docket No. 1-4, at pp. 3-5].

On December 14, 2020, an immigration judge ultimately denied Petitioner's applications for Adjustment of Status under INA § 209(a), Asylum under INA § 208, Waiver of Inadmissibility under INA § 209(c), Withholding Removal under INA § 241(b)(3), and Protection under the Convention Against Torture, and ordered Petitioner to be removed to Somalia. (Ligon Decl., [Docket No. 13], at ¶ 15); [Docket Nos. 1-3; 1-4, at p. 4; 1-13, at p. 3].  On or about January 21, 2021, Petitioner filed a pro se appeal with the Board of Immigration Appeals ("BIA").  (Ligon Decl., [Docket No. 13], at ¶ 16); [Docket Nos. 1-13, at p. 3; 1-14, at p. 3].

On January 25, 2021, Petitioner was released from prison, immediately taken into the custody of ICE, and housed at the Sherburne County Jail in Elk River, Minnesota.  (Ligon Decl., [Docket No. 13], at ¶ 17).  Shortly thereafter, he obtained pro bono legal counsel for assistance in his ongoing removal proceedings wherein briefs were filed with the BIA on or about May 2021.[3] (Pet., [Docket No. 1], at ¶¶ 25-26).

About two months later, on July 26, 2021, the BIA sustained Petitioner's appeal and remanded the case, concluding that it "[was] necessary for the Immigration Judge to consider the [Petitioner's] mental competency in the first instance." (Ligon Decl., [Docket No. 13], at ¶ 18);

---

[3] On March 29, 2021, Petitioner requested an additional time to submit his brief to the BIA, which was subsequently submitted on May 4, 2021.  [Docket Nos. 1-4, at pp. 1-2; 1-14, at p. 2].  Respondents submitted their reply brief on May 20, 2021.  [Docket No. 1-14, at p. 2].

[Docket Nos. 1-13, at p. 3; 1-7].  In doing so, the BIA directed the immigration judge to "apply the guidance outlined in [the BIA's] decision in <u>Matter of M-A-M-</u>. . ." (<u>Id.</u>).  The BIA also "declined to reach [Petitioner's] alternative arguments of IJ error in the denial of his applications for relief."  (Pet., [Docket No. 1], at ¶ 27).

On September 9, 2021, an immigration judge conducted a <u>Matter of M-A-M-</u> hearing to determine whether Petitioner was competent to continue with his removal proceedings.  (Ligon Decl., [Docket No. 13], at ¶ 19).  In advance of the hearing, Petitioner submitted numerous documents related to his mental health, including a psychiatric assessment, as well as, the country conditions of Somalia.  [Docket No. 1-12, at p. 2].  However, the immigration judge requested further documentation to corroborate Petitioner's testimony, finding that Petitioner was not credible.  [Docket No. 1-12, at p. 2].  Thereafter, on September 16, 2021, Petitioner submitted his supplemental filing as to his mental health and the country conditions of Somalia.  (<u>Id.</u>).  Petitioner also filed a motion to set a "new merits hearing," arguing that "the failure to assess his competency during the prior immigration court proceedings, coupled with [Petitioner's] incarceration and mental illness, had deprived him of a fair hearing on his applications for relief from removal."  (Pet., [Docket No. 1], at ¶ 28); [Docket No. 1-14, at p. 2].  Petitioner then appeared for a second <u>Matter of M-A-M-</u> hearing on September 21, 2021.  [Docket No. 1-13, at p. 7].

On October 7, 2021, the immigration judge ultimately determined that Petitioner was competent "at his prior pro se removal hearing," and therefore, his "removal proceedings [met] due process standards."  (Pet., [Docket No. 1], at ¶ 29); [Docket No. 1-13, at p. 3].  The immigration judge then certified the case back to the BIA, and in doing so, determined that a new merit hearing as to Petitioner's various applications of relief was not necessary "given the [BIA's] prior decision to remand the record without addressing the remaining issues raised on appeal."  (Ligon Decl.,

[Docket No. 13], at ¶ 20); [Docket No. 1-13]. On November 3, 2021, Petitioner filed a second appeal with the BIA as to the immigration judge's competency decision. [Docket No. 1-14]. The BIA has not yet issued a decision as to the remaining issues on Petitioner's first appeal or as to his second appeal. (Ligon Decl., [Docket No. 13], at ¶ 21).

On December 8, 2021, Petitioner filed the present Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Pet., [Docket No. 1]). Petitioner argues that his continued detention at Sherburne County Jail—which was ten months at the time the Petition was filed and has now reached fifteen months—violates his due process rights. (See Id.).

## II. Habeas Review

A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement, and under certain circumstance, if he is successful in his challenge, to obtain his release. See Preiser v. Rodriguez, 411 U.S. 475, 485 (1973). Title 28 U.S.C. § 2241 confers jurisdiction upon a Federal Court, such as this Court, to hear habeas challenges to the lawfulness of persons detained for immigration related purposed; however, the Court's jurisdiction to do so is limited. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

This Court may review immigration related detentions to determine if said detentions comport with the demands of the Constitution. Id. This Court lacks the jurisdiction, however, to review a discretionary decision made by immigration authorities, such as the decision to remove an individual from the United States. See Id. Thus, this Court's task in an immigration related habeas challenge is to assess the constitutional permissibility of the detention itself.

Before the Court can determine the constitutional propriety of Petitioner's detention, the Court must first determine the statutory basis for Petitioner's detention. On the record now before

the Court, it is undisputed that Petitioner has <u>not</u> received a final order of removal from the United States to Somalia. Therefore, Petitioner's detention is authorized pursuant to 8 U.S.C. § 1226(c).

## III.     Analysis

Petitioner, through his present Habeas Petition, seeks his release from ICE custody, or in the alternative, a bond hearing to determine the propriety of his continued detention. (<u>See generally</u> Pet., [Docket No. 1]). In support of this request, Petitioner argues that his ongoing detention—now approaching fifteen months—violates his due process rights. (<u>Id.</u>). Petitioner also seeks an Order from the Court, directing for certain procedures to take place during his bond hearing, including that the Government be required to prove by clear and convincing evidence that Petitioner's continued detention is necessary to protect the public or prevent his risk of flight. (<u>Id.</u> at p. 37).

### A.  Length of Detention

The United States Supreme Court has explained that even individuals who attain legal immigration status allowing them to be in the United States "do not have an absolute right to remain here." <u>Jennings v. Rodriguez</u>, 138 S. Ct. 830, 837 (2018). An individual initially admitted to the United States may be removed if it is later discovered that he was inadmissible at the time of entry into the United States. <u>See Id.</u> Or, as in the case of Petitioner, an individual already admitted to the United States may be removed if he is convicted of certain criminal offenses after admission. <u>Id.</u> at 837-38. With respect to the detention of individuals falling into either of these two categories:

> [8 U.S.C. §] 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." [8 U.S.C.] § 1226(a). "Except as provided in subsection (c) of this section," the Attorney General "may release" an alien detained under § 1226(a) "on bond . . . or conditional parole." [<u>Id.</u>]

> Section 1226(c), however, carves out a statutory category of aliens who may <u>not</u> be released under § 1226(a).  Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities.  [8 U.S.C.] § 1226(c)(1).  The Attorney General may release aliens in those categories "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes, and "the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceedings." [8 U.S.C.] § 1226(c)(2).

<u>Jennings</u>, 138 S. Ct. at 837-38 (2018) (emphasis in original).  In the present case, Petitioner falls into § 1226(c).

"'It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.'  At the same time, however, [the United States Supreme Court] has recognized [a reasonable period of] detention during deportation proceedings as a constitutionally valid aspect of the deportation process."  <u>Demore v. Kim</u>, 538 U.S. 510, 523, 530 (2003) (citation omitted).  Specifically, the "detention of deportable criminal aliens pending their removal proceedings . . . serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."  <u>Id.</u> at 527-28.  Moreover, "detention under § 1226(c) has a 'definite termination point':  the conclusion of removal proceedings."  <u>Jennings</u>, 138 S. Ct. at 846 (quoting <u>Demore</u>, 538 U.S. at 529).

The United States Supreme Court was presented with arguments like those presently before this Court in <u>Jennings v. Rodriguez</u>.  Specifically, the plaintiffs in <u>Jennings</u> argued that § 1226(c) does "not authorize 'prolonged' detention in the absence of an individualized bond hearing at which the Government proves by clear and convincing evidence that the . . . detention remains justified."  138 S. Ct. at 839.  The plaintiffs in <u>Jennings</u> argued that such prolonged detention without an individualized bond hearing violated the Due Process Clause of the Fifth Amendment.

Id.  The United States District Court for the Central District of California agreed, and it entered a permanent injunction ordering the Government to provide individual bond hearings.  Id.  On appeal, the Ninth Circuit Court of Appeals affirmed, but did so based upon its statutory construction of § 1226(c) "to include an implicit 6-month time limit on the length of mandatory detention."  Id. at 846-48.  In so construing § 1226(c), the Ninth Circuit relied heavily on the reasoning in Zadvydas, 536 U.S. 678, in which the United States Supreme Court construed the statute that governs detention after an order of removal has been issued:

> [The statute] mean[s] that an alien who has been ordered removed may not be detained beyond "a period reasonably necessary to secure removal," and it further held that six months is a presumptively reasonable period. After that, the Court concluded, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must either rebut that showing or release the alien.

Jennings, 138 S. Ct. 843 (quoting Zadvydas, 533 U.S. at 699, 701). Citing Zadvydas, the Ninth Circuit in Jennings imposed a similar 6-month limitation on detention during removal proceedings under § 1226(c), and it held that, during removal proceedings, a detained individual "must be given a bond hearing every six months and that detention beyond the initial 6-month period is permitted only if the Government proves by clear and convincing evidence that further detention is justified." Jennings, 138 S. Ct. at 839.

The United States Supreme Court reversed in Jennings, distinguishing the statutes governing detention after an order of removal has issued, as examined in Zadvydas, from those governing detention during removal proceedings.  Id. at 843-44.  The United States Supreme Court held that, unlike the statutes at issue in Zadvydas, "§ 1226(c) does not on its face limit the length of the detention it authorizes"; instead, § 1226(c) "makes clear that the detention of aliens within its scope must continue 'pending a decision on whether the alien is to be removed from the United States.'" Id. at 846 (emphasis in original).  Therefore, the United States Supreme Court in Jennings

held that "subject only to express exceptions, §§ 1225(b) and 1226(c) authorize detention until the end of applicable [removal] proceedings." Id. at 842. However, because the Ninth Circuit had not reached the petitioners' argument that prolonged detention under § 1226(c) without an individualized bond hearing is unconstitutional, the United States Supreme Court remanded the case to the Ninth Circuit for consideration of those constitutional arguments on their merits. Id. at 851.

Later on that same year in this District, the Honorable Patrick J. Schiltz issued an informative decision analyzing detention under § 1226(c), noting that various courts have utilized a fact-specific inquiry considering several factors as guidance for identifying when "continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." Muse v. Sessions, 409 F.Supp.3d 707, 715 (D. Minn. 2018) (quoting Diop v. ICE/Homeland Sec., 656 F.3d 221, 232 (3d Cir. 2011)). Among those factors are: (1) the total length of detention to date, (2) the likely duration of future detention, (3) the conditions of detention, (4) delays of the removal proceedings caused by the detainee, (5) delays of the removal proceedings caused by the government, and (6) the likelihood that the removal proceedings will result in a final order of removal. Id. (citing Reid v. Donelan, 819 F.3d 486, 500-01 (1st Cir. 2016)); see also Tao J. v. Sec'y of Dep't of Homeland Sec., No. 18-cv-1845 (NEB/HB), 2019 WL 1923110, at *3 (D. Minn. Apr. 30, 2019) (applying the same factors). In Muse, the Court found that four of these factors weighed in favor of the petitioner and thus granted the petitioner relief. Muse, 409 F. Supp. 3d at 714.

Since then, Courts in this District have consistently applied the <u>Muse</u> factors to determine whether prolonged detention without a bond hearing violates due process. <u>See, e.g.</u>, <u>Pedro O. v. Garland</u>, 543 F.Supp.3d 733 (D. Minn. 2021); <u>Omar M. v. Garland</u>, No. 20-CV-1784 (NEB/BRT), 2021 WL 3442337, at *1 (D. Minn. Mar. 29, 2021), appeal dismissed sub nom. <u>Mohamed v. Garland</u>, No. 21-2211, 2021 WL 5630346 (8th Cir. Aug. 11, 2021; <u>Liban M.J. v. Sec'y of Dep't of Homeland Sec.</u>, 367 F. Supp. 3d 959 (D. Minn. 2019); <u>Abshir H.A. v. Barr</u>, No. 19-cv-1033 (PAM/TNL), 2019 WL 3719414 (D. Minn. Aug. 7, 2019); <u>Omar M. v. Barr</u>, No. 18-cv-2646 (JNE/ECW), 2019 WL 3570790 (D. Minn. May 6, 2019), report and recommendation adopted, No. 18-cv-2646 (JNE/ECW), 2019 WL 2755937 (D. Minn. July 2, 2019); <u>Tao J.</u>, 2019 WL 1923110; <u>Abdulkadir A. v. Sessions</u>, No. 18-cv-2353 (NEB/HB), 2019 WL 201761 (D. Minn. Jan. 15, 2019); <u>Jamal A. v. Whitaker</u>, 358 F. Supp. 3d 853 (D. Minn. 2019); <u>Mohamed v. Sec'y, Dep't of Homeland Sec.</u>, 376 F.Supp.3d 950 (D. Minn. 2018).

Respondents argue that the Court should decline to apply the <u>Muse</u> factors.[4] (Resp.'s Mem., [Docket No. 12], at pp. 15-17). However, as Petitioner points out, this argument has been repeatedly rejected in this District. <u>See</u> <u>Jaime M. v. Garland</u>, No. CV 21-743 (NEB/BRT), 2021 WL 5569605, at *2 (D. Minn. Sept. 1, 2021); <u>Omar M.</u>, 2021 WL 3442337, at *6; <u>Pedro O.</u>, 2021

---

[4] Respondents also argue that: 1) the Supreme Court held in <u>Jennings</u> that the language of § 1226(c) clearly mandates that certain removable aliens be detained for the entire duration of removal proceeding; 2) the constitutionality of the statute's mandatory detention scheme was upheld in <u>Demore</u>; 3) the Eighth Circuit's decision in <u>Ali v. Brott</u>, confirms that there is no reasonableness requirement or time limitation in detaining aliens pursuant to § 1226; and 4) the government's interest in effecting removal for certain removable aliens does not change over time. (Respondent's Mem., [Docket No. 12], at pp. 7-14). However, Courts in this District have rejected these arguments. <u>See</u> <u>Pedro O.</u>, 543 F. Supp. 3d at 747-48 (rejecting similar arguments raised by Respondents); <u>Abdullahi J. v. Barr</u>, No. 19-cv-2998 (PAM/KMM), [Docket No. 25], at pp. 11-12 (D. Minn. Mar. 2, 2020) (declining to reconsider the conclusion of numerous courts within the District of Minnesota that the Due Process Clause places limits on prolonged mandatory detention under § 1226(c)). Further, to the extent Respondents' rely on <u>Ali v. Brott</u>, 770 Fed.Appx. 298, 302 (8th Cir. 2019), the Court notes that, while the Eighth Circuit weighed in on the reasonableness of the length of detention for aliens pursuant to § 1226(a), the Eighth Circuit noted that § 1226(a) gives aliens "<u>more protection</u> against prolonged detention than aliens detained under § 1226(c)." <u>Id.</u> (emphasis in original). Here, Petitioner is detained pursuant to § 1226(c). Further, unlike Petitioner in the present case, the petitioner in <u>Ali</u> had been given a bond hearing while awaiting his final removal order. Thus, <u>Ali v. Brott</u> is distinguishable from the present case.

WL 3046799, at *5-8; Abdirizak Mohamed A. v. Brott, No. 18-cv-3063 (ECT/HB), 2020 WL 1062913, at *3 (D. Minn. Mar. 5, 2020) ("Finally, there is an obvious intra-district trend to apply factors identical to those applied in the Report and Recommendation and Muse to evaluate a due-process challenge to a § 1226(c) detention. There is no good reason to buck this trend.").

Accordingly, this Court will apply the well-established Muse factors to determine whether Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment.

### 1. Total Length of Detention to Date

First, in examining the length of detention, the Eighth Circuit has yet to squarely address what constitutes a reasonable length of detention, however, while there is no bright-line rule, other Circuits have weighed in on the issue. Although not controlling, the Third Circuit characterized nine months as "straining any common-sense definition of a limited or brief civil detention." Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 477 (3d Cir. 2015). Similarly, the Sixth Circuit has articulated that "when actual removal is not reasonably foreseeable, criminal aliens may not be detained beyond a reasonable period required to conclude removability proceedings without a government showing of a 'strong special justification,' constituting more than a threat to the community, that overbalances the alien's liberty interest." Ly v. Hansen, 351 F.3d 263, 273 (6th Cir. 2003). "[C]ontinued detention without inquiry into its necessity becomes more and more suspect" as detention continues to extend past the time frame described in Demore. See generally Diop, 656 F.3d at 234.

In the present case, Petitioner has been continuously detained under § 1226(c) for approximately fifteen months without any bond hearing to determine whether he is a danger to the community or likely to flee. (See generally Ligon Decl., [Docket No. 13]). Petitioner's detention is now significantly longer than the reasonable amount of time contemplated in Demore, which

mentioned a month and a half to five months as a reasonable period.[5]  Furthermore, detentions of

a similar extended length as in the present case, as well as, several even shorter, have been found

elsewhere to violate the Due Process Clause.  See, e.g., Pedro O., 543 F. Supp. 3d at 739 (13

months); Tao J., 2019 WL 1923110, at *2 (14.5 months); Muse, 409 F. Supp. 3d at 714 (14

months); Sajous v. Decker, 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018) (eight months);

Gordon v. Shanahan, 2015 WL 1176706, *3 (S.D.N.Y. March 13, 2015) (eight months); Harpa v.

Mumford, 211 F. Supp. 3d 706, 717 n.6 (D. Md. 2016) (10 months).  Therefore, Petitioner's

current, ongoing detention which has lasted approximately fifteen months in duration without any

bond hearing weighs heavily in favor of granting relief.

### 2.  Likely Duration of Future Detention

Second, Courts consider how long the detention is likely to continue in the absence of

judicial relief.  In estimating when detention will end, Courts consider the anticipated duration of

all removal proceedings, including administrative and judicial appeals.  Ly, 351 F.3d at 272 ("The

entire process, not merely the original deportation hearing, is subject to the constitutional

requirement of reasonability.").   In Muse, for example, the immigration judge denied the

petitioner's claim for relief, and the petitioner promptly appealed the decision to the BIA.  Muse,

409 F. Supp. 3d at 716-17.   The Court found that the petitioner could potentially be detained for

up to another eighteen months because, at the time he filed his petition, he had just appealed the

immigration judge's decision.  Thus, the Court reasoned that if he received an adverse decision

---

[5] The Supreme Court described the "brief period" that it held valid: "in the majority of cases," detention pursuant to § 1226(c) in 2003 "lasts for less than . . . 90 days." Demore, 538 U.S. 510 at 529. In the overwhelming majority of cases—85%— "removal proceedings are completed in an average time of 47 days and a median of 30 days." Id. "In the remaining 15% of cases," in which an appeal in Demore was taken, "appeal takes an average of four months." Id. The Court thus concluded that "[i]n sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases." Id. at 530.

from the BIA, he then would appeal the BIA's decision to the Eighth Circuit.  Id.  Therefore, the Court concluded that the potentially lengthy appeals process weighed in the petitioner's favor. Id.

    In the present case, the future length of the ongoing detention also supports granting Petitioner relief.  Petitioner's second appeal to the BIA is currently pending, (Ligon Decl., [Docket No. 13], at ¶ 21), and the Government will not release Petitioner unless the appeal is resolved in his favor.  Further, the Government cannot remove Petitioner from the United States unless the appeal before the BIA is resolved in its favor.  Moreover, even after the BIA has made a decision, the Government or Petitioner may pursue a rehearing or appeal the decision to the Eighth Circuit. See Tua Mene Lebie B. v. Barr, No. 19-cv-2177 (JNE/HB), 2019 WL 5715703 (D. Minn. Nov. 5, 2019)

    Like in Muse, Petitioner here could easily be detained for another year or more by the time all appeals have been exhausted.  The immigration judge denied Petitioner's claims for relief over a year ago on December 14, 2020. (Ligon Decl., [Docket No. 13], at ¶ 15). Thereafter, Petitioner appealed the immigration judge's decision to the BIA and briefing for the appeal was completed in May 2021. (Ligon Decl., [Docket No. 13], at ¶ 16).  The BIA sustained Petitioner's appeal and remanded the case, directing the immigration judge to conduct a Matter of M-A-M- Hearing to determine Petitioner's mental competency.   (Ligon Decl., [Docket No. 13], at ¶ 18). Approximately four months later, an immigration judge determined that Petitioner was competent to continue with his removal proceedings.  (Ligon Decl., [Docket No. 13], at ¶ 19).  Thereafter, Petitioner filed a second appeal and briefing was completed in November 2021.  [Docket No. 1-14].   If Petitioner loses this latest appeal, it is likely he will seek review in the Eighth Circuit, and it may well be another year before he gets a decision there. See Muse, 2018 WL 4466052, at *5.

Therefore, given the likelihood of continued, prolonged detention absent judicial relief, this factor weighs heavily in favor of granting relief.

### 3.  Conditions of Detention

Third, Courts consider the conditions of the alien's detention.  Aliens held under § 1226(c), like Petitioner here, are subject to civil detention rather than criminal incarceration.  Chavez-Alvarez, 783 F.3d at 477.  The more the conditions under which the alien is being held resemble penal confinement, the stronger his argument, and "[a]s the length of the detention grows, the weight given to this aspect of his detention increases."  Id.  Furthermore, other courts in this District here too have found that this factor weighs in a petitioner's favor where the petitioner is being held in a county jail.  Muse, 409 F. Supp. 3d at 717 ("The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing."); Abshir H.A., 2019 WL 3719414, at *2 (same); Pedro O., 543 F. Supp. 3d at 739 ("[T]he conditions of Pedro's detention favor granting relief because, as the Parties agree, the county jail where he is being held is "indistinguishable from penal confinement.").

In the present case, the Court finds that this third factor also weighs in Petitioner's favor. Petitioner, who is a civil detainee, is being held in the Sherburne County Jail, a criminal detention facility, in Elk River, Minnesota.  Like in Muse, supra, Petitioner here is similarly being detained in a county jail alongside inmates serving criminal sentences.  Thus, because the current conditions of Petitioner's detention are indistinguishable from penal confinement, this factor also weighs in Petitioner's favor.

### 4.  Delays of Removal Proceedings Caused by Detainee

Fourth, Courts consider the nature and extent of any delays in the removal proceedings caused by the alien. "An alien should not be punished for raising legitimate defenses to removal."

Muse, 409 F. Supp. 3d at 717; see Ly, 351 F.3d at 272 ("An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him.").  Indeed, "the mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition." Hernandez v. Decker, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018). Courts should, however, be "sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration."  Ly, 351 F.3d at 272.  If Courts did not take into account the alien's role in delaying removal proceedings, they "would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release." Id.

Here, in opposition to the present petition, Respondents concede that that "the record reflects [Petitioner's] case has steadily moved forward since his detention in January 2021." (Resp.'s Mem., [Docket No. 12], at p. 19).  The Court agrees.  There is nothing in the record now before the Court to suggest that Petitioner engaged in "the type of [dilatory or frivolous] delay anticipated by this analysis." See Tua Mene Lebie B., 2019 WL 5715703, at *5.  Therefore, the Court finds this fourth factor also weighs in Petitioner's favor.

### 5.  Delays of Removal Proceedings Caused by the Government

Fifth, Courts consider the nature and extent of any delays in the removal proceedings caused by the Government. "Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." Sajous, 2018 WL 2357266, at *11.

16

Like Petitioner, there is nothing in the present record to suggest that the Government has engaged in any dilatory tactics. This fifth factor thus weighs in the Government's favor.

### 6. The Likelihood of a Final Removal Order

Lastly, Courts consider the likelihood that the proceedings will culminate in a final removal order. While not singularly determinative, the more likely that the alien will ultimately be removed, the longer the detention that may be deemed reasonable. See Muse, 409 F. Supp. 3d at 718.

This sixth factor does not weigh strongly in either party's favor in the present case. The BIA has not yet issued a decision on Petitioner's currently pending appeal, and the record before the Court provides no firm basis on which to predict the outcome of that appeal.

In summary, the Court finds the cumulative weight of the present record weighs heavily in Petitioner's favor. The undersigned therefore finds that continuing to detain Petitioner beyond the fifteen months he has already been detained, without any bond hearing, violates his due process rights under the Fifth Amendment.[6]

As relief, Petitioner seeks release within thirty (30) days or, in the alternative, an Order requiring the Respondents to convene a bond hearing before an immigration judge "that complies with Due Process," as discussed infra. (Pet., [Docket No. 1], at pp. 36-37). The undersigned finds that an expeditious bond hearing is the appropriate remedy. See Tua Mene Lebie B., 2019 WL 5747817, at *6 (holding that "the appropriate remedy is to order the agency detaining [the alien] to hold a bond hearing in the very near future."); see also Pedro O., 543 F.Supp.3d at 741; Jaime M., 2021 WL 5569605, at *4; Abshir H.A., 2019 WL 3719414, at *3.

---

[6] Because the Court has determined that Petitioner's continued detention violates his due process rights under the Fifth Amendment, the Court does not reach Petitioner's argument that continued detention without a bond hearing also violates rights secured under the Eighth Amendment.

Therefore, the undersigned recommends that Petitioner's request for a bond hearing be **GRANTED**.

### B. Procedures for Petitioner's Bond Hearing

Having found that Petitioner is entitled to a bond hearing, the Court now turns to the procedures Petitioner seeks to have this Court impose at his bond hearing. In order to purportedly comport with Due Process, Petitioner requests that this Court require the immigration judge to: 1) impose the burden of proof upon the Government to demonstrate by clear and convincing evidence that Petitioner is a risk of flight or danger; 2) consider and affirmatively analyze whether the Government has proven by clear and convincing evidence whether no amount of bond or alternative supervision could secure his release; 3) consider less restrictive alternatives to detention, such as a halfway house; and 4) consider alternative conditions of release, including Petitioner's ability to pay any bond that is set. (Pet., [Docket No. 1], at pp. 20-35).

#### i. The Burden and Quantum of Proof at Petitioner's Bond Hearing

The Due Process Clause of the Fifth Amendment mandates that "no person shall . . . be deprived of life, liberty or property . . . without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. Zadvydas, 533 U.S. at 690. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and any detention must be reasonably related to the purpose for which the individual was detained. See Zadvydas, 533 U.S. at 690 (citation omitted).

The undersigned has previously recommended that the burden-of-proof issue in immigration " [is] a decision left for the immigration judge to determine in the first instance." See Amreya R.S. v. Barr, No. 19-CV-3042 (NEB/LIB), 2020 WL 2770942, at *10 (D. Minn. May 6,

18

2020), report and recommendation adopted, No. 19-CV-3042 (NEB/LIB), 2020 WL 2769278 (D. Minn. May 28, 2020); see also Tua Mene Lebie B., 2019 WL 5747817; Abshir H.A., 2019 WL 3719414, at *3.

However, courts in this District have recently determined that, in the context of § 1226(c), the burden of proof in immigration bond hearings belong with the Government.  See e.g., Jaime M., 2021 WL 5569605, at *4; Omar M., 2021 WL 3442337; Pedro O., 543 F.Supp.3d at 753; Abdullahi M., No. 19-CV-3099 (ECT/HB), Report and Recommendation, [Docket No. 21], (D. Minn. Apr. 10, 2020), vacated as moot, Order, [Docket No. 29], (D. Minn. July 27, 2020).

In discussing the burden-of-proof issue under § 1226(c), the Court finds the Pedro O. decision instructive.  In that case, the Petitioner was subject to mandatory detention under § 1226(c) and removal proceedings after pleading guilty to an aggravated felony.  Pedro O., 543 F.Supp.3d at 746.  The Honorable Katherine M. Menendez applied the Muse factors and found that Pedro O.'s ten-month length of detention without a bond hearing violated his right to due process.  Id. at 749-752.  Judge Menendez then concluded that Pedro O. was entitled to a bond hearing, and in doing so, recommended that the burden be placed on the Government at Pedro O.'s bond hearing to prove by clear and convincing evidence that he was danger to the community or a flight risk.  Id. at 756-758.  Judge Menendez reasoned that requiring Pedro O. to argue at his bond hearing that the Government should bear the burden of proving his dangerousness and flight risk "would be an exercise in futility" because "immigration judges believe themselves prohibited from considering the issue."  Id. at 753.  As such, "the courts of this District are the only avenue where this important constitutional question can be addressed."  Id. at 754.  Further, Judge Menendez reasoned that failing to address the burden of proof issue would then result in Pedro O.'s continued detention being prolonged for "many more months before he could raise [the] burden-of-proof

issue again, even if he filed a second habeas petition without delay." Pedro O., 543 F.Supp.3d at

755. In adopting the report and recommendation, the Honorable Eric C. Tostrud recited the three

factors from Mathews v. Eldridge, 424 U.S. 319 (1976), and found that, in addition to Judge

Menendez's reasoning, the balancing of the factors weighed in favor of requiring the Government

to justify Pedro O.'s continued confinement by clear and convincing evidence. Id. at 741-744.

This Court finds the circumstances in the present case to be substantially similar to Pedro

O. As in Pedro O., Petitioner is subject to mandatory detention under 1226(c) for being convicted

of an aggravated felony. This Court similarly applied the Muse factors and determined, supra, that

Petitioner's fifteen-month detention under § 1226(c) without a bond hearing is a violation to his

due process rights. Turning to the burden of proof issue, the Court is persuaded by Judge

Menendez's reasoning that, here, failure to require the Government at Petitioner's bond hearing to

meet its burden by clear and convincing evidence that he is a danger to the community, or a flight

risk would result in the burden being shifted onto Petitioner thereby potentially prolonging his

detention. Pedro O., 543 F.Supp.3d at 755. The Court also agrees that leaving the burden of proof

issue unaddressed here for Petitioner to raise at his bond hearing "would be an exercise of futility."

Id. at 753.

The three-part balancing test applied by Judge Tostrud in Pedro O. also supports placing

the burden of proof on the Government in this case. The three-part balancing test in Mathews, 424

U.S. 319, requires that the Court determining the appropriate burden and standard of proof for a

particular setting evaluate: (1) "the private interest that will be affected by the official action"; (2)

"the risk of an erroneous deprivation of such interest through the procedures used, and the probable

value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest,

including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." <u>Mathews</u>, 424 U.S. at 335.

As the <u>Pedro O.</u> court held, Petitioner's interest in avoiding prolonged detention and being free from confinement is the most significant liberty interest there is. <u>Zadvydas</u>, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); <u>Addington v. Texas</u>, 441 U.S. 418, 425 (1979). Here, as already discussed, Petitioner has been held for fifteen months in Sherburne County Jail alongside inmates serving criminal sentences. <u>See</u> <u>Muse</u>, 409 F. Supp. 3d at 716 ("How long this deprivation has lasted is critical to the due-process inquiry."); <u>see also</u> <u>Diop</u>, 656 F.3d at 234 (noting that "continued detention without inquiry into its necessity becomes more and more suspect" as detention continues past the time frame described in <u>Demore</u>). Therefore, Petitioner's private interest is strong. <u>See</u> <u>Pedro O.</u>, 543 F.Supp.3d at 741 (citing <u>Addington</u>, 441 U.S. at 426, 432-33) (holding that, in light of the "serious nature of [this] deprivation, courts generally assign to the Government the burden to justify detaining an individual.").

As to the second factor, the record suggests that placing the burden on Petitioner at his bond hearing could result in a risk of an erroneous detention or a wrongful determination that he is a flight risk or a danger to the community due to Petitioner's purported mental health issues. Further, as <u>Pedro O.</u> reasoned, "[w]hen an individual's physical liberty is at stake, the balance shifts" so that "[e]ven when the Government is pursuing legitimate interests, it must bear a heightened burden because 'the possible injury to the individual is significantly greater than any possible harm to the state.'" <u>Pedro O.</u>, 543 F.Supp.3d at 742 (citing <u>Addington</u>, 441 U.S. at 427).

Lastly, the government's interest in ensuring Petitioner's appearance at future immigration proceedings and to prevent danger to the community is considerable.  See Zadvydas, 533 U.S. at 690 (noting that the governmental interests of "(1) ensuring that noncitizen[s] do not abscond and (2) ensuring that do not commit crimes" is "well-established").  The Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."  Demore, 538 U.S. at 523.  "[I]n Congress's judgment, it is particularly important to detain aliens who have been convicted of certain criminal offenses.  Pedro O., 543 F.Supp.3d at 742 (citing Demore, 538 U.S. at 517-18).

While it is well established that due process tolerates detaining a criminal alien for a reasonable period to facilitate their removal, the allocation of risk of error shifts to the Government to a standard of proof of clear and convincing evidence.  See Addington, 441 U.S. at 427-31 (distinguishing between criminal and civil proceedings and requiring a showing of clear and convincing evidence in the civil-commitment context); Pedro O., F.Supp.3d at 742-743; see also German Santos, 965 F.3d at 213-14.  Therefore, in balancing the three Mathews factors, this Court holds that the Government has the burden to justify Petitioner's continued confinement under § 1226(c) by clear and convincing evidence.  Pedro O., 543 F.Supp.3d at 742; see also German Santos v. Warden Pike County Correctional Facility, 965 F.3d 203, 213-14 (3d Cir. 2020).

Respondents argue that addressing the burden of proof before a bond hearing is premature because "no immigration judge has yet made the individual fact-intensive determination as to whether the petitioner is entitled to bond." (Resp.'s Mem., [Docket No. 12], at pp. 20-21).  However, this argument has been repeatedly rejected in this District.  See Marco A.C.-P. v. Garland, No. 20-CV-1698 (JRT/TNL), 2021 WL 1976132, at *5 (D. Minn. May 18, 2021) (rejecting the same argument, holding that "federal courts are best equipped to resolve questions

of this nature."); <u>Pedro O.</u>, 543 F.Supp.3d at 740; <u>Omar M.</u>, 2021 WL 3442337, at *4-7 (addressing the burden after a petitioner had a first bond hearing).  Indeed, this Court, as well as others, has already determined, <u>supra</u>, that requiring Petitioner to raise his arguments with the immigration judge at his bond heading would be "an exercise in futility."  <u>See</u> <u>Pedro O.</u>, 543 F.Supp.3d at 740; <u>Omar M.</u>, 2021 WL 3442337, at *6 (same).  Further, in this context, the Court is not providing prospective relief, but is "fashioning the appropriate constitutional remedy for an injury that has already occurred—namely, an unconstitutionally prolonged, bond-hearing-less detention."  <u>Pedro O.</u>, 543 F.Supp.3d at 740.

Therefore, to the extent Petitioner seeks an Order of this Court requiring an expeditious bond determination hearing where the Government should bear the burden to prove, by clear and convincing evidence, that Petitioner's continued detention is necessary because he is either a danger to the community or a flight risk, the undersigned recommends the Petition be **GRANTED**.

  *ii. The Consideration of Less Restrictive Alternatives to Detention and Alternative Conditions of Release*

Petitioner next requests that the immigration judge at his bond hearing be required to consider and affirmatively analyze whether the Government has proven by clear and convincing evidence whether no amount of bond or alternative supervision could secure Petitioner's release, consider less restrictive alternatives to detention, such as a halfway house, and consider alternative conditions of release, including whether Petitioner's can afford to pay any bond that is set.  (Pet., [Docket No. 1], at pp. 20-35).  Respondents argue that existing bond procedures do not violate the due process because the immigration judge may consider in a bond hearing "<u>any</u> factors, evidence, or testimony available to or presented by the noncitizen or ICE," including an ability to pay and alternative conditions to detention.  (Resp.'s Mem., [Docket No. 12], at p. 23).

Turning first to Petitioner's request that his ability to pay a bond be considered by the immigration judge, at least one other court in this District has addressed this argument—the Pedro O. court. Petitioner correctly asserts that Judge Menendez did note that "a bond decision that does not take into account a person's financial circumstances would be, to say the least . . . , constitutionally suspect." Pedro O., 543 F.Supp.3d at 758. However, Judge Menendez found that, unlike the burden of proof issue, Pedro O. failed to show that it would be futile to argue his inability to pay any bond set by the immigration judge during his bond hearing. Id. Further Judge Menendez found that considerations of Pedro O.'s ability to pay "appears compelled by BIA case law." Id. Therefore, Judge Menendez declined to recommend an Order requiring that the immigration judge consider Pedro O.'s ability to pay. Id.

Here, Petitioner addresses the Pedro O. decision at length, arguing that Judge Menendez's characterizations of prior BIA case law was "flawed" and "plainly mistaken," urging this Court to impose this requirement on the immigration judge because, contrary to Judge Menendez's conclusion, BIA case law does not require an immigration judge to consider Petitioner's ability to pay. (Resp.'s Mem., [Docket No. 1], at pp. 32-33). However, the Court finds this argument unpersuasive.

Pursuant to BIA regulations, the IJ has wide discretion to consider a non-exhaustive list of bond determination factors in determining whether to set bond, and, if so, the appropriate amount of the bond. The immigration judge may consider any or all of the following:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee

prosecution or otherwise escape from authorities; and (9) the alien's manner of entry into the United States.

In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006).

While it is true that Petitioner's ability to pay is not specifically listed as one of the bond determination factors, this does not foreclose the immigration judge from considering it, even if he or she relied on Guerra. Guerra, 24 I. & N. Dec. at 39-40. In other words, the immigration judge could consider Petitioner's ability to pay as a bond determination factor. Indeed, no regulation precludes an IJ from considering Petitioner's ability to pay bond if this information is presented at the bond hearing. 8 C.F.R. § 1003.19(d). The same can be said for Petitioner's request that the immigration judge consider less restrictive alternatives to detention or other alternative supervision. The IJ may consider "any information that is available . . . or that is presented to him or her by [Petitioner] or" Respondents at the bond hearing. Id. Moreover, any bond decision is subject to additional review to ensure compliance with these regulations, as Petitioner may appeal the immigration judge's bond hearing determination to the BIA. 8 C.F.R. § 236.1(d)(3). Like the petitioner in Pedro O., Petitioner, here, has not shown that it would be futile to argue these factors at his bond hearing. Pedro O., 543 F.Supp.3d at 758. As Respondents assert, existing bond procedures grant the immigration judge broad discretion to consider any factors, including less restrictive alternatives to detention and alternative supervision. Resp.'s Mem., [Docket No. 12], at p. 23).

Therefore, because the Court is not sufficiently convinced that it would be futile for Petitioner to argue his inability to pay any bond amount set at his bond hearing, other alternative supervision, or less restrictive alternatives of detention, this Court declines to recommend any procedural requirements or consideration of remedies that extend beyond those well-established bond procedures that an immigration judge routinely applies at a bond hearing. Nor will the Court

recommend an Order requiring for the immigration judge to consider and affirmatively analyze whether the Government has proven by clear and convincing evidence whether no amount of bond or alternative supervision could secure Petitioner's release. These considerations are decisions left for the immigration judge to determine in the first instance.

Therefore, to the extent Petitioner seeks an Order of this Court requiring the immigration judge to consider less restrictive alternatives to detention or alternative supervision, including Petitioner's ability to pay, the undersigned recommends the Petition be **DENIED**.

However, for the reasons discussed above, the undersigned recommends that Petitioner's request for a bond hearing be **GRANTED**. At that bond hearing, the immigration judge should be required to place the burden of proof on the Government, and continued detention should only be authorized if the government meets its burden with clear and convincing evidence. The undersigned further recommends said bond hearing be required to be conducted within twenty-one days of the date on which this Report and Recommendation may be adopted.

## IV.    Objection Period

The undersigned notes that one last issue warrants discussion—the time in which the parties are permitted to object to the present Report and Recommendation, if they so choose.

This Report and Recommendation is not an Order or judgment of the District Court, and it is, therefore, not appealable directly to the Eighth Circuit Court of Appeals. Instead, Local Rule 72.2(b)(1) provides that "[a] party may file and serve specific written objections to a magistrate judge's" Report and Recommendation, such as the present Report and Recommendation, "within 14 days after being served with a copy of the" Report and Recommendation, "unless the court sets a different deadline." LR 72.2(b)(1). A party may then respond to those objections within fourteen days after being served a copy of the objections. LR 72.2(b)(2). Thus, under normal circumstances

a party would be permitted fourteen (14) days in which to file its objections to the present Report and Recommendation, if it chooses to object, and then the opposing party would be permitted an additional fourteen (14) days in which to file its response to said object, if it so chooses. See Id.

In the present case, however, Petitioner's prolonged detention would be unnecessarily further prolonged by this objection period to the point that the time limit in which the undersigned recommends the bond hearing be conducted would be nearly doubled. Thus, if the parties were permitted the full objection period, comprised of twenty-eight days, then the relief recommended by the undersigned would be materially diminished because Petitioner would have been detained for an additional month or more without an opportunity for a bond hearing.

Therefore, the Court, in its inherent power to manage pending litigation, shortens to seven (7) days the time in which any party is permitted to object to the present Report and Recommendation, and corresponding, the Court shortens to seven (7) days the time in which any party is permitted to respond to any objection to the present Report and Recommendation. An objection period of any longer duration would undermine the recommended relief.

## V.    Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The Petition for Writ of Habeas Corpus, [Docket No. 1], be **GRANTED in part and DENIED in part**;

2. To the extent the present Petition seeks a bond hearing, the Petition be **GRANTED**;

3. To the extent the Petition seeks an Order of this Court establishing the burden of proof required to be demonstrated at said bond hearing, the Petition be **GRANTED**;

4.  To the extent the Petition seeks an Order of this Court requiring the immigration judge to consider and affirmatively analyze whether the Government has proven by clear and convincing evidence whether no amount of bond or alternative supervision could secure Petitioner's release; consider less restrictive alternatives to detention; or consider alternative supervision, including Petitioner's ability to pay, at said bond hearing, the Petition be **DENIED**;

5.  If the present Report and Recommendation is adopted, the immigration judge be required to conduct a bond hearing by no later than twenty-one (21) days after the date this Report and Recommendation is adopted; and

6.  If the present Report and Recommendation is adopted and the immigration judge fails to timely conduct a bond hearing relative to Petitioner within the twenty-one (21) days permitted, Petitioner shall be released from custody no later than thirty (30) days from the date that this Report and Recommendation is adopted.


Dated: July 27, 2022                                    s/Leo I. Brisbois
                                                        Hon. Leo I. Brisbois
                                                        United States Magistrate Judge

28